SHERRIN *v.* COFFMAN.

Opinion delivered March 15, 1920.

1. BOUNDARIES — ORAL AGREEMENTS AFFECTING.—Where adjacent owners are in dispute as to their dividing line, their oral agreement as to the boundary establishes the line, which, when followed by possession with reference thereto, is valid and binding on the parties.

2. BOUNDARIES—ORAL AGREEMENTS—NATURE.—Oral agreements between adjacent owners affecting the boundary, when followed by possession thereunder, do not operate as conveyances, so as to pass title from one to the other, but proceed upon the theory that the true boundary line is in dispute, and the agreement serves to fix the true boundary.

3. BOUNDARIES — ORAL AGREEMENT—EVIDENCE.—Evidence *held* insufficient to prove an oral agreement between adjoining owners as to the dividing line.

4. TRIAL—ABSTRACT INSTRUCTION.—In an action involving a boundary dispute between adjoining owners, an instruction as to the validity of a parol agreement as to the location of the dividing line was erroneous and prejudicial where there was no evidence as to such agreement.

5. BOUNDARIES—EVIDENCE OF COUNTY SURVEYOR.—While the statute makes a certified copy of the county surveyor's record of a survey made by him *prima facie* evidence, no such effect is given to his oral testimony with reference to such survey.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; reversed.

STATEMENT OF FACTS.

Appellees brought this suit against appellants to recover possession of a strip of land containing two or three acres.

On the 20th day of November, 1902, Chas. C. Coffman received a deed to forty acres of land. On the 10th

day of February, 1909, Chas. C. Coffman and Pearl R. Coffman, his wife, received a deed to an adjoining forty acres of land. They resided on this land with their two minor children until Chas. C. Coffman died.

W. H. Goode owned a tract of land south of this and on the 19th day of February, 1903, conveyed it to J. E. Latham. Latham in turn conveyed the land to C. J. Sherrin, one of the appellants, on the 9th day of September, 1915. The strip of land in controversy contains two or three acres and is a long narrow strip of land on which there is situated a house.

According to the testimony of Mrs. Pearl R. Coffman she continued to reside on the eighty acres of land above referred to after her husband's death, and in 1913 applied to the county surveyor to make a survey of her land. The surveyor did make the survey and established the line between her and Latham, and her line as established by him contained the strip of land in controversy. Mrs. Coffman got possession of the house on the strip of land in controversy through her tenants. About a year after the survey had been made Latham came to her and asked permission to move the house, acknowledging the line that the surveyor had located for her. Verbal notice was given to the tenant of Latham that the survey would be made, but the record does not show that it was communicated to Latham or that notice was given in any manner to him that the survey would be made.

The county surveyor, who made the survey, was a witness for appellees and testified as to its correctness. C. J. Sherrin took possession of the strip of land in controversy after he purchased the tract of land from Latham. Two witnesses were introduced by him who testified that they had known the land for many years, and that the strip in controversy had always been considered as a part of the Goode or Latham tract; one of them testified that the county surveyor had established the boundary between the two tracts when W. H. Goode owned the south tract, and that he established the line so that the strip in controversy fell on the Goode tract; and that

thereafter the strip in controversy had been regarded as the property of Goode and later of Latham when he purchased from Goode.

The other witness testified that he was twenty-seven years of age; that he had known the two tracts all of his life, and that the strip in controversy had been regarded as belonging to the Goode or Latham tract.

Sherrin had a survey made, and his surveyor located the boundary line so that the strip in controversy fell on his tract. The jury returned a verdict for appellees, and the case is here on appeal.

*John E. Miller* and *C. E. Yingling,* for appellants.

1. The testimony shows conclusively that all the land in controversy belonged to the land purchased by defendants and had been in their possession of them and their grantors for more than 30 years and it was error to give instruction No. 2, as the title had become absolute in defendant's grantors by adverse possession and any agreement Latham had with plaintiff, Mrs. Coffman, could not divest title and reinvest it in plaintiff, notwithstanding the land might have originally belonged to and was within the boundaries of the tract now owned by the plaintiff. The title to the strip was complete by adverse possession long before the agreement was made. 80 Ark. 444; 80 *Id.* 575. See also 118 *Id.* 10; 4 R. C. L. 128; 101 *Id.* 409.

2. Instruction No. 2 is abstract. Kirby's Digest, § 1136; Kirby & Castle's Digest, § 1251. Notice of survey must be given to be binding. Kirby's Digest, § 1135; K. & C. Dig., § 1250; 97 Ark. 193. See also 44 *Id.* 287; 88 *Id.* 37. The certificate of a surveyor is only *prima facie* correct. Kirby's Digest, § 1142; K. & C. Dig., § 1257; 4 R. C. L., p. 118. § 57; 2 So. Dak. 269; 39 Am. St. 783. It was error to give instruction No. 1. 4 R. C. L., pp. 117-118.

2. It was error to refuse No. 1 asked by defendants, also No. 2. 88 Ark. 48; 97 *Id.* 193. It was also error to refuse No. 4 for defendants. *Supra.*

*Brundidge & Neelly,* for appellees.

1. The cases cited by appellants are not applicable. See 101 Ark. 409; 106 S. W. 406; 5 Cyc. 930; 96 Ark. 168; 75 *Id.* 395.

2. There was no error in the instructions. 44 Ark. 287.

3. The judgment is sustained by the evidence and the law. Cases *supra.*

HART, J. (after stating the facts). Counsel for appellants assign as error the action of the court in giving instruction No. 2, which is as follows:

"The jury are instructed that if you find from the testimony in this case that the plaintiff caused the line to be established between her lands and that now claimed by the defendants, and the same was established by the county surveyor of White County, and at the time it was so established both the plaintiff and Latham, the owner of the lands at the time, now claimed by the defendants, agreed to the same and each took possession of their respective lands as established by said survey, and you further find that the land in controversy was included in the lands of the plaintiff, then your verdict will be for the plaintiffs."

Counsel for appellees seek to uphold this instruction upon the authority of *Payne* v. *McBride,* 96 Ark. 168, and other cases decided by this court holding, in effect, that, the owners of adjoining lands being in dispute as to the dividing line, their oral agreement as to the boundary establishes the line, which, when followed by possession with reference thereto, is conclusive upon them.

The agreement in cases of this kind do not operate as a conveyance so as to pass title from one to another, but they proceed upon the theory that the true boundary line is in dispute, and that the agreement serves to fix the true line to which the title of each extends. The parties thereafter hold up to the line as they did before by virtue of their respective deeds. The theory is that the parties have simply by agreement settled the location of

their boundary lines which was in doubt instead of having the court settle it for them. So when they orally agree upon the line and the agreement is accompanied by possession to the agreed line, such agreement will be valid and binding.

In the present case there is no testimony to show that the parties made any agreement about the boundary line, or that such agreement if made was executed. Mrs. Coffman's testimony only goes to the extent of showing that she had a survey made and that the adjoining proprietor afterwards recognized its correctness and asked permission to move a house situated on the disputed strip. This testimony falls short of showing that the parties made an oral agreement establishing a boundary line which had been in dispute and that the possession of the disputed tract was taken by Mrs. Coffman by virtue of such agreement. According to her own testimony, she took possession of the disputed tract because the survey which she caused to be made by the county surveyor showed that it belonged to the tract of land owned by herself and her husband. The testimony does not establish any agreement between herself and Latham as to the establishment of the boundary line, or that she took possession of the strip in controversy under any such agreement. Hence there was no testimony upon which to predicate the giving of the instruction in question. It was calculated to confuse and mislead the jury by submitting to it an issue which was not in the case. Hence it was necessarily prejudicial and calls for a reversal of the judgment.

The court also instructed the jury that, the survey made by the county surveyor for Mrs. Coffman was *prima facie* evidence of the correct line so far as it appeared from the survey. This instruction was also erroneous. Our statute provides that the county surveyor shall keep a record of every survey made by him under the statute, and that a certified copy of this record under the hand of the surveyor shall be deemed *prima facie* evidence

in any court of record.  *Smith* v. *Leach*, 44 Ark. 287, and *Russell* v. *State*, 97 Ark. 92.

In the present case the official record of the county surveyor was not placed in evidence, nor was it shown that notice that his survey would be made was given as provided by the statute.  The statute is precise in prescribing that it is only a certified copy of the record of the county surveyor which shall be admitted as *prima facie* evidence.  The oral evidence of the county surveyor gave his acts no more validity that the acts of any other surveyor.  He was simply a witness in the case, and the probative value of his testimony is not fixed by law as in the case of his official return when the survey has been in the manner provided by the statute.  There was no evidence in the case to which the instruction in question could apply, and its necessary effect was to confuse and mislead the jury.  Hence it was erroneous and prejudicial.  *Beeman* v. *Black*, 49 Mich. 598, and *Arneson* v. *Spawn* (S. D.), 39 Am. St. Rep. 783.

For the errors indicated the judgment must be reversed and the cause remanded for a new trial.