DICKINSON *v.* STEPHENSON.

4-9758                                    248 S. W. 2d 389

Opinion delivered May 5, 1952.

*Peyton D. Moncrief,* for appellant.

*Botts & Botts,* for appellee.

ED. F. McFADDIN, Justice. . This is a dispute between adjacent property owners as to a strip of land 9 feet, 2 inches wide, and 150 feet long, off the west side of lot five (5) in a certain block in the City of DeWitt.

Appellant, Dickinson, is the record title owner of lot six (6); and appellee, Stephenson, is the record title owner of lot five (5). Both lots face north; and lot six (6) is immediately west of lot five (5). Stephenson filed this action in ejectment, alleging, *inter alia,* his ownership and right to possession of the disputed strip. In addition to a general denial, and other defenses, Dickinson pleaded (a) seven years' adverse possession[1] of the disputed strip; and (b) "agreed boundary," in that Dickinson and a former owner of lot five (5), had agreed that Dickinson's east boundary included the disputed strip.[2]

---

[1] Sec. 37-101, Ark. Stats., is the Statute pleaded.

[2] The answer stated the defense in this language: "That many years ago the above said East line of defendant's described property was established and agreed to by the then adjacent owners between the

A jury trial resulted in a verdict and judgment, awarding Stephenson the strip in dispute; and Dickinson has appealed. Many questions are presented in the briefs; but we find it necessary to discuss only one of them; and that relates to the error of the Court in giving plaintiff's instruction No. 1. This instruction, given over Dickinson's objections, reads:

"Gentlemen of the jury, you are instructed that unless the defendants in this case, Mr. and Mrs. Dickinson, show by a preponderance of the testimony that they have held the lands in controversy by adverse possession for a period of seven (7) years actually, openly, notoriously, continuous, hostile and exclusive to the rest of the world with the intention to hold these lands against the true owner, then you should find for the plaintiff."

This was a "binding" instruction,[3] and completely ignored Dickinson's defense of "agreed boundary." Even though the Court later gave Dickinson's instructions numbered 2 and 3 on this issue of "agreed boundary," nevertheless, plaintiff's said Instruction No. 1 was a binding instruction and ignored a material issue in the case. The holding in *Turquett* v. *McMurrain*, 110 Ark. 197, 161 S. W. 175, is in point. That case was an ejectment action between adjacent property holders as to a disputed strip. The appellant, Turquett, claimed that there had been an agreed boundary, followed by possession. In that case, just as in the case at bar, the trial court gave a binding instruction on the necessity of seven (7) years' adverse possession, and then later gave an instruction incorporating the issue of agreed boundary. In holding an error to have been committed in giving conflicting instructions, Mr. Justice WOOD, speaking for this Court, said:

said lands of the plaintiff and defendants, and the above-described fence and monuments erected thereon, which fence and other monuments (except those monuments removed as set forth above) still stand and have at all times since been recognized by all adjacent owners as the true boundary line. That they and their predecessors in title have at all times since used said land including the strip of land plaintiff seeks to take by his suit, . . ."

[3] In *Reynolds* v. *Asherbranner*, 212 Ark. 718, 207 S. W. 2d 304, we discussed "binding instructions."

"One of the issues presented by the pleadings was as to whether or not appellant and appellee had agreed upon a boundary line between their adjoining lands. The court correctly presented this issue in Instruction No. 2, given at the instance of the appellant. This instruction was in accord with the rule announced in *Payne* v. *Mc-Bride,* 96 Ark. 168, 131 S. W. 463. But, in instructions given at the instance of appellee, the court made the appellant's right of recovery depend solely upon whether or not he had occupied the land by adverse possession for seven years, intending to claim the same as his own, regardless of whether or not the line established by the Puckett survey was the true boundary between them.

"One ground of appellant's objection to these instructions, given at the instance of the appellee, was that they were in conflict with instructions given at the request of the appellant, and 'because they were confusing to the jury, in connection with the instructions given for appellant.'

"These instructions, given at the instance of the appellee, ignored the contention of appellant as to the boundary being established by parol agreement, and the court erred in not harmonizing the instructions."

The above quoted holding in *Turquett* v. *McMurrain, supra,* is ruling in the case at bar, and requires a reversal because Dickinson offered substantial evidence to sustain his claim of agreed boundary. It was testified (a) that Mrs. Williams owned and occupied lot five (5) when Dickinson purchased lot six (6); and (b) that at the time of his purchase, Dickinson went to Mrs. Williams, and they agreed on the boundary as now claimed by Dickinson. A disinterested witness testified:

"Q. Did you hear a conversation between Mr. R. M. Dickinson and Mrs. Williams? A. Yes, sir. Q. What was the conversation about? A. It was about this line. She assured Mr. Dickinson that there wouldn't be any trouble about the line. Q. Did you understand it to be the fence line between these two places—the place that Mr. Dickinson was referring to and the other place? A. It was the

fence line. That's the way I understood it. Q. That there wouldn't be any trouble over the line, between the two places? A. No, sir. Mrs. Williams told him that it was the agreed line.''

In *Peebles* v. *McDonald*, 208 Ark. 834, 188 S. W. 2d 289, we cited many cases to sustain this quoted statement:

'' 'Where there is no doubt or uncertainty, or a dispute has arisen, as to the true location of a boundary line, the owners of the adjoining lands may, by parol agreement, fix a line that will be binding upon them, although their possession under such agreement may not continue for the full statutory time.' ''

In 8 Am. Jur. 798, in discussing boundaries settled by parol agreement, the text states:

''Such an oral agreement is not in contravention of the statute of frauds; and when executed and actual possession is taken under it, it becomes conclusive against the owners and those claiming under them.'' [4]

Stephenson, claiming under Mrs. Williams, was bound by her agreement, if made according to the witness, and if adhered to by Dickinson and Mrs. Williams with that sufficient definiteness required to constitute an agreed boundary. At all events, the giving of plaintiff's Instruction No. 1, which completely ignored this issue of agreed boundary, requires a reversal of the judgment and a remand of the cause.

---

[4] To support the above text, see also Annotations in 69 A. L. R. 1478 and 113 A. L. R. 429, which discusses in detail the "persons bound."